**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

|                                                    |     |                                             |
| -------------------------------------------------- | --- | ------------------------------------------- |
| RODERICK RIDEAU,                                   | :   |                                             |
| Petitioner,                                        | :   | Case No. 3:00CV427                          |
| vs.                                                | :   | District Judge Walter Herbert Rice          |
|                                                    |     | Magistrate Judge Sharon L. Ovington         |
| HARRY RUSSELL, Warden,                             | :   |                                             |
| Lebanon Correctional Institution,                  | :   |                                             |
| Respondent.                                        | :   |                                             |
|                                                    | :   |                                             |

**SUPPLEMENTAL REPORT AND RECOMMENDATIONS[1]**

## I.    INTRODUCTION

The misfortune of Petitioner Roderick Rideau, a former California resident, is that police, prosecutors, and ultimately a trial judge in Ohio connected him to cocaine hidden in a secret compartment in the trunk of a car not registered in his name and delivered from California to Dayton, Ohio to someone other than Rideau.  His resulting conviction for aggravated trafficking at the conclusion of a bench trial in the Montgomery County, Ohio Court of Common Pleas led to a prison sentence of fifteen years to life.  He is currently serving this sentence in the custody of Respondent and the State of Ohio.[2]

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2]  Ohio public records reveal that Rideau is presently incarcerated at the Madison Correctional Institution ("MCI") in London, Ohio.  *See* www.drc.state.oh.us (offender search database).  Consequently, the proper Respondent in this case is now Alan Lazaroff, the Warden of MCI.  For docketing purposes, the Respondent remains Harry Russell.

This case is presently before the Court following an evidentiary hearing and upon the parties' respective Post-Hearing Briefs (Doc. #s 67-69).  The necessity for the evidentiary hearing arose from an Order remanding the case to the undersigned Judicial Officer for resolution of three issues, which will each be addressed below.  The remand Order also requires reconsideration of the analysis and conclusions set forth in the previously filed Report (Doc. #42) in light of the results of the evidentiary hearing and any pertinent recent case law.  (Doc. #52).

This Supplemental Report incorporates in-full by reference the prior-filed Report in this case. (Doc. #47).

At this point in this case, Rideau's Third and Fourth Grounds for Relief remain pending:

Ground Three:      Petitioner was denied his right to trial by jury; he was tried to the court but there is no jury waiver in the record.

Ground Four:      Petitioner received ineffective assistance of counsel on appeal.

(Doc. #23, pp. 5, 12-13).

## II.    RIDEAU'S FOURTH GROUND FOR RELIEF: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

### A.    <u>Remand Issues and Answers</u>

The remand Order necessitates addressing two issues both of which are related to Rideau's claim of ineffective assistance of appellate counsel.  These issues are asked and answered as follows:

1.    Why did Rideau's appellate counsel fail to file a timely Application to Reopen Appeal under Ohio R. App. P. 26(B)[3] in the Ohio Court of Appeals?

<u>Answer</u>:     Rideau's appellate counsel failed to file in the Ohio Court of Appeals a

---

[3] Rule 26(B) provides in part: "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed ... within ninety days from journalization of judgment unless the applicant shows good cause for filing at a later time."

timely Rule 26(B) Application to Reopen due to his lack of knowledge of this procedure and due to his lack of knowledge of the jury-waiver claim underlying Rideau's claim of ineffective assistance of appellate counsel.

2.      Was Rideau's appellate counsel's failure to timely file a Rule 26(B) Application simply attorney error or ignorance, or in the alternative, did an objective external cause preclude Rideau's appellate counsel from timely filing a Rule 26(B) Application?

<u>Answer</u>:        Rideau's appellate counsel's failure to timely file a Rule 26(B) Application was more than attorney error or ignorance; it was constitutionally deficient performance, which prejudiced Rideau's direct appeal in violation of his Sixth Amendment right to counsel on direct appeal.  No objective external cause, such as a conflict of interest, existed for Rideau's appellate counsel's untimely Rule 26(B) Application.

In both his habeas Petition and his Post-Hearing Brief, Rideau contends his appellate attorney's failure to raise his jury-waiver claim (his Third Ground for Relief) on direct appeal amounted to ineffective assistance in the constitutional sense.  This is a colorable claim – indeed a meritorious claim – albeit one upon which federal habeas corpus relief cannot be granted, for procedural reasons to be explained later.  First, however, the merits.

### B.      <u>Applicable Standards</u>

"A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal."  *Franklin v. Anderson*, 434 F.3d 412, 428 (6th Cir. 2006).

To demonstrate that he was provided constitutionally ineffective assistance of counsel on direct appeal, Rideau must first show that his "counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1986); *see Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005).

"Failure of appellate counsel to raise an issue can amount to constitutionally ineffective

assistance....  However, counsel has no obligation to raise every possible claim..., and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment....  'Counsel's performance is strongly presumed to be effective.'...  Even if counsel made a mistake, the mistake might not be serious enough to have effected the defendant's constitutional rights."  *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (internal citations omitted).

The following list of relevant factors applies to determining whether Rideau's appellate counsel's omission of the jury-waiver claim was either constitutionally deficient performance or within the realm of acceptable professional performance:

1.      Were the omitted issues significant and obvious?

2.      Was there arguably contrary authority on the omitted issues?

3.      Were the omitted issues clearly stronger than those presented?

4.      Were the omitted issues objected to at trial?

5.      Were the trial court's rulings subject to deference on appeal?

6.      Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7.      What was appellate counsel's level of experience and expertise?

8.      Did the petitioner and appellate counsel meet and go over possible issues?

9.      Is there evidence that counsel reviewed all the facts?

10.     Were the omitted issues dealt with in other assignments of error?

11.     Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*McFarland*, 356 F.3d at 711 (quoting *Mapes v. Coyle*, 171 F.3d 408, 427-29 (6th Cir. 1999)).  This is not an exhaustive list and it must not lead the Court into producing "a correct 'score'...."  *Greer*

*v. Mitchell*, 264 F.3d 663, 679 (6th Cir. 2001).

Rideau must also show that his appellate attorney's deficient performance prejudiced his case on appeal. *See Strickland*, 466 U.S. at 687; *see also Whiting*, 395 F.3d at 616. "To establish prejudice, he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 687; *see Whiting*, 395 F.3d at 616.

### C. <u>Analysis</u>

Beginning with the strong presumption that the performance of Rideau's appellate counsel, Roger J. Rosen, Esq., was effective, *see McFarland*, 356 F.3d at 711, a review of the applicable factors reveals that attorney Rosen's performance fell below the level of acceptable professional assistance. The jury-waiver claim that attorney Rosen omitted on direct appeal was both significant and obvious. Both Ohio statutory law – Ohio Rev. Code §2945.05 – and Ohio Supreme Court cases – *e.g., State ex rel. Jackson v. Dallman*, 70 Ohio St.3d 261 (1994); *State of Ohio v. Pless*, 74 Ohio St.3d 333 (1996) – required a written jury waiver.

Ohio Rev. Code §2945.05 provided:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such a waiver by a defendant, shall be in writing, signed by the defendant, and filed in said case and made a part of the record thereof....

*See Pless*, 74 Ohio St.3d at 337.

The Ohio Supreme Court in *State of Ohio v. Pless*, a case decided before Rideau's trial and direct appeal, the Ohio Supreme Court characterized the requirements of §2945.05 as "clear and

unambiguous." 74 Ohio St.3d at 337. The Ohio Supreme Court held, "Absent strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury. Additionally..., we hold that the failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction." *Pless*, 74 Ohio St.3d at 339. The result in *Pless* was a reversal of the defendant's multiple convictions (including an aggravated murder conviction) despite the fact that the trial transcript showed that the defendant had voluntarily signed a written jury waiver in open court and despite the fact that the trial court issued a journal entry indicating that the defendant had waived his right to a jury trial. *Pless*, 74 Ohio St.3d at 335. These indications in the record did not strictly comply with Ohio Rev. Code §2945.05's mandate that a written and signed jury waiver be filed in the case record. *Pless*, 74 Ohio St.3d at 339-40.

Rideau's case record does not contain a written jury waiver signed by Rideau. It contains even less information about Rideau's jury waiver than was at issue in *Pless*, since the transcript of Rideau's trial contains no mention at the start of trial that he signed a written jury waiver form or that he waived his right to a jury trial. *See* Doc. #43 at 3-10. Given this trial record, which lacks strict compliance with §2945.05, Rideau's jury-waiver claim had obvious significance and merit. There is no doubt that if attorney Rosen had raised this claim on direct appeal, Rideau was entitled to a reversal of his conviction under *Pless*, 74 Ohio St.3d at 339. Given the clarity of §2945.05 and *Pless*, there is no arguably contrary Ohio law on this point.[4]

Because this issue was a certain winner on appeal, it was a stronger issue and stood a far

---

[4] This analysis considers, in Respondent's favor, that Rideau's claimed violation of §2945.05 only involved an issue of state law, although it also implicates whether Rideau knowingly and voluntarily waived his right to a jury trial under the Seventh Amendment to the Constitution. The fact that attorney Rosen failed to recognize the §2945.05 issue and raise it on direct appeal is properly considered as part of the ineffective assistance of counsel analysis, even though it was a state law issue, because it was a winning issue that should have resulted in reversal of Rideau's conviction. *See Pless*, 74 Ohio St.3d at 339.

greater chance of obtaining a reversal of Rideau's convictions, particularly  in light of *Pless*, than the four other issues raised by attorney Rosen on direct appeal.[5]  This is not to say that those other issues were weak or insignificant, but it is to recognize that Rideau's §2945.05 claim was certain to result in a reversal of his conviction under *Pless*, had it been raised.

Although Rideau's trial attorney (John H. Rion, Esq.) did not object to the absence of a written jury waiver (Doc. #43 at 3-10), this does not alter the strict-compliance mandate of §2945.05 and *Pless*, or the likely reversal of Rideau's conviction required by *Pless*.  Similarly, although Rideau testified in the evidentiary hearing in the present habeas corpus case that he simply went along with his trial attorney's advice to waive the jury trial (Doc. #67 at 49), this did not permit the trial court to forego strict compliance with §2945.05.  Section 2945.05 does not contain any exception, and again, *Pless* mandated strict compliance, which required the trial court to file in the record a written jury waiver signed by Rideau.  74 Ohio St.3d at 339.  *Pless*, moreover, is instructive on the issue of strict compliance.  The fact that the defendant in *Pless* had waived his right to a jury trial and signed the waiver form in open court did not excuse the trial court's failure to strictly comply with §2945.05.  74 Ohio St.3d at 339.  Similarly, in Rideau's case, neither the fact that his trial attorney did not object to the absence of a written and signed jury waiver nor the fact that Rideau acknowledges that he waived his right to a jury trial upon the advice of his trial attorney excuses the trial court's failure to strictly comply with §2945.05.  *See Pless*, 74 Ohio St.3d at 339.

In the evidentiary hearing in the present habeas corpus case, attorney Rosen testified that he did not omit the jury-waiver issue as part of an appellate strategy or as part of an effort to winnow out claims for appeal.  (Doc. #67 at 20-22).  He did not weigh the pluses and minuses of the

---

[5] The first report identifies the four claims raised by attorney Rosen on direct appeal.  (Doc. #47 at 4).

7

§2945.05 claim versus any other issue in the case.  *Id*. at 21.  In fact, attorney Rosen, a California attorney, was not even aware of the §2945.05 claim at the time of Rideau's direct appeal.  *Id*. at 22.  Although attorney Rosen has an enormous and admirable amount of experience in criminal cases in many states, *id*. at 17-18, he explained the circumstances leading to the discovery of the §2945.05 claim as follows:

> [M]y associate who was working with me on the appellate project for Mr. Rideau brought it to my attention, that in this state, in Ohio, that particular issue has to be raised by way of direct appeal.  I was unaware of that because I'd never heard of that in any other appellate work that I had done in any other states or in California. That's not the case in California either.

*Id*. at 22.  This lapse of knowledge fell below mere mistake or ignorance of the law because it was an obvious and perhaps even a simple issue given the clarity of §2945.05 and *Pless*, and because it was an issue that required a reversal of Rideau's conviction under *Pless*, 74 Ohio St.3d at 339.

Accordingly, beginning with the strong presumption that attorney Rosen's performance on direct appeal was effective, the factors discussed above result in the conclusion that attorney Rosen's failure to raise the trial court's non-compliance with Ohio Rev. Code §2945.05 was so serious an omission that he "was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687; *see Whiting*, 395 F.3d at 616.

The prejudice of this constitutionally deficient performance exists in the impact of not raising this winning claim on direct appeal.  Not only did attorney Rosen's performance result in losing what should have – and would have under *Pless* – been a winning appeal, it also resulted in a waiver of this meritorious claim under Ohio procedural law.  Under Ohio law, a claimed violation of §2945.05 must be raised on direct appeal.  *Pless*, 74 Ohio St.3d at 339.  Prejudice consequently exists not only because there is a reasonable probability, indeed a certainty, that an outcome

8

favorable to Rideau would have occurred if this claim had been raised, but also because the failure

to raise this claim resulted in its waiver for all time in the Ohio courts. *See id*.

In addition, the constitutionally deficient performance by appellate counsel left in place a

highly questionable non-jury verdict. As noted explained in the first Report, Rideau's aggravated

trafficking conviction was based on the trial judge's finding that Rideau constructively possessed

– rather than actually possessed – the drugs hidden in the trunk of a car (a 1986 Mazda) he never

actually possessed in the State of Ohio. *See* Doc. #47 at 5-6, 23-25. This was a highly questionable

verdict because the trial judge may have based his conclusion that Rideau possessed the drugs based

only on reasonable inferences rather than proof beyond a reasonable doubt. This appears in the

following excerpt from the trial judge's written Decision:

> Defendant points out there is no direct evidence that he knew about the cocaine hidden in the vehicle. There is no evidence of his fingerprints in the car. The California registration is in some other person's name. The truck driver and anyone else had the opportunity to put the drugs in the vehicle during the long trip from California.
>
> These are valid points. However, the element of knowledge can be inferred from facts reasonably concluded from other evidence. Here, Meeks said Rideau told her he was planning to send a car to her. Linda Watson said Rideau asked her in California to arrange shipment to Meeks [in Dayton, Ohio], and Rideau's wife gave her $500.00 to do so. Drugs were found in a carefully hidden compartment of the vehicle. These facts reasonably lead to the conclusion that Rideau knew that the drugs were secreted in the Mazda. No basis exists to infer that the delivery driver or anyone else hid the drugs in the car.
>
> Watson was Rideau's agent for shipment. Meeks was his agent to receive physical possession of the car and the secreted drugs. As far as the evidence shows, she was innocent of knowledge about the drugs. She looked to Rideau for authority to use the vehicle. Rideau controlled her use of it. Therefore, under the definition of possession in [Ohio Rev. Code §]2925.01(L), Rideau possessed the 1986 Mazda and the drugs when Meeks received the vehicle.... Rideau didn't have possession of the Mazda, his agent did. Through her, he possessed the drugs....

(Doc. #26, Exhibit 1 at 5-6 (emphasis added)).

In this manner, the trial judge found Rideau's possession based only on reasonable inferences rather than stating that these inferences convinced him of Rideau's possession beyond a reasonable doubt. Although there was nothing constitutionally wrong with reasonable inferences, nowhere in the trial judge's Decision did he specifically identify or apply the beyond the reasonable doubt standard. Most significantly, he did not state that his reasonable inferences convinced him beyond a reasonable doubt that Rideau possessed the cocaine. *See* Doc. #26, Exh. 1.

Of course, the Due Process Clause of the Fourteenth Amendment to the Constitution "protects against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Since this standard – proof beyond a reasonable doubt – "dates at least from our early years as a Nation...." *id*. at 361, it may be generally presumed that an experienced American trial judge would require proof beyond a reasonable doubt of each essential element of a charged criminal offense. The problem with the trial judge's Decision in Rideau's case is that the trial judge made reasonable inferences leading to a crucial finding of fact – Rideau possessed the drugs at issue – without explicitly stating that the evidence convinced him of this fact beyond a reasonable doubt. *See* Doc. #26, Exh. 1 at 5-7.

"The standard of proof beyond a reasonable doubt..., 'plays a vital role in the American scheme of criminal procedure,' because it operates to give 'concrete substance' to the presumption of innocense to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding.... At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolized the significance our society attaches to the criminal sanction and thus to liberty itself." *Jackson v. Virginia*, 443 U.S.

307, 315 (1979) (internal citation omitted). Consequently, "an essential element of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316; *see In re Winship*, 397 U.S. at 364 ("use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.").

Again, the trial judge in Rideau's case did not expressly state that he required proof beyond a reasonable doubt of Rideau's possession of the cocaine at issue, and he instead expressly stated that he was making reasonable inferences about Rideau's possession – the crucial element upon which Rideau's guilt turned. *In re Winship*, perhaps the closest ally to Rideau's case, and the Fourteenth Amendment required the trial judge to apply the beyond the reasonable doubt standard to each essential element, including Rideau's possession of the cocain, necessary to support a criminal conviction. 397 U.S. at 364. *Winship*, however, contains a fact distinguishing it from Rideau's case: In *Winship*, the trial judge explicitly applied the preponderance of evidence standard, as required by New York juvenile-delinquency law, to find the defendant guilty of a delinquency. 397 U.S. at 360. The trial judge in *Winship* also "acknowledged that the proof might not establish guilt beyond a reasonable doubt...." *Id*. In contrast, the trial judge in Rideau's case did not explicitly reject the beyond the reasonable doubt standard, and he did not explicitly state that he was applying the preponderance of the evidence standard. *See* Doc. #26, Exh. 1.

In the next significant U.S. Supreme Court case involving the burden of proof in criminal

cases, *Jackson v. Virginia*, 443 U.S. 307 (1979), the trial judge – unlike in Rideau's case – declared himself convinced of guilt beyond a reasonable doubt, *id*. at 311. Given that finding, the Supreme Court determined that a highly deferential standard applied to federal habeas review of state criminal convictions under the Due Process Clause of the Fourteenth Amendment. *Id*. at 313-26.

Despite these distinguishing features of *Winship* and *Jackson*, grave concern exists over whether the trial judge in Rideau's case was convinced of Rideau's possession of the cocaine beyond a reasonable doubt as required by *Winship* and *Jackson* – that is, whether he reached the "subjective state of near certitude of guilt...," *Jackson*, 443 U.S. at 316, of Rideau's possession required by the Due Process Clause of the Fourteenth Amendment. Hence, the presence in Rideau's case of a highly questionable non-jury verdict of guilt.

This, in turn, means that Rideau's waiver of a jury trial was no trivial matter. This likewise demonstrates further prejudice caused by attorney Rosen's omission on direct appeal of a meritorious jury-waiver claim, since the omission left in place a highly questionable non-jury verdict of guilt, which could have and would have been reversed under *Pless*, 74 Ohio St.3d at 339.

Accordingly, Rideau's appellate counsel provided constitutionally ineffective assistance by failing to raise in Rideau's direct appeal the meritorious claim that the trial court failed to file in the record a written jury waiver signed by Rideau as mandated by Ohio Rev. Code §2945.05.

Unfortunately for Rideau this violation of his federal constitutional rights has no impact on his ability to obtain a Writ of Habeas Corpus, because he waived his Fourth Ground for Relief for purposes of federal habeas corpus review by failing to present it to the Ohio courts as required by Ohio procedural law.

III.     **PROCEDURAL DEFAULT, CAUSE AND PREJUDICE, AND WAIVER**

A.     <u>**Remand Issue and Answer**</u>

The remand Order necessitates addressing one remaining issue related to whether Rideau's claim of ineffective assistance of appellate counsel is barred by procedural default.  This issue is asked and answered as follows:

Did Rideau's appellate counsel's failure to file a timely Rule 26(B) Application  amount to constitutionally ineffective assistance of appellate counsel thereby constituting "cause" for Rideau's failure to raise his jury-waiver claim in the Ohio courts?

<u>Answer</u>:     No.  Rideau did not have a constitutional right to counsel during his Rule 26(B) proceedings, and consequently, his counsel's failure to file a timely Rule 26(B) Application cannot constitute "cause" for Rideau's procedural default.

B.     <u>**Rideau's Procedural Defaults**</u>

Rideau committed procedural defaults with regard to both his Third and Fourth Grounds for relief.  The existence of these procedural defaults, as set forth in the prior Report and Recommendations in this case, is not altered by the evidence presented during the hearing on remand.

The first Report and Recommendations in this case concluded that Rideau committed a procedural default in the Ohio courts with regard to his Third Ground for Relief by failing to raise it on his direct appeal in both the Ohio Court of Appeals and the Ohio Supreme Court.  (Doc. #47 at 14-16).  The first Report also concluded that Rideau committed a procedural default with regard to his claim of ineffective assistance of appellate counsel by failing to timely file, and show "good cause" for not timely filing, an Application to Reopen Appeal under Ohio R. App. P. 26(B).  (Doc. #47 at 16-17).

In light of these procedural defaults, the prior Report further concluded that Rideau must show cause and prejudice to avoid waiving these claims for purposes of federal habeas review. (Doc. #47 at 17-19).  Since the time of the prior Report, pertinent case law concerning these procedural defaults, cause and prejudice, and waiver has not changed the analysis set forth in the Report.  *See id.*

In the present habeas corpus case, Rideau's Post-Hearing Brief contends: (1) his claim of ineffective assistance of appellate counsel is sufficient cause and prejudice to excuse his procedural default in failing to raise his jury-waiver claim on direct appeal; (2) this claim of ineffective assistance of appellate counsel is not procedurally defaulted because Ohio law excused Rideau's failure to raise that claim as long as he was represented by the same attorney in his direct appeal and in his Rule 26(B) proceedings; and (3) Rideau's claim of ineffective assistance of appellate counsel is not procedurally defaulted because Ohio R. App. P. 26(B) is not an adequate and independent state procedural ground barring federal habeas review.

### C.    <u>Cause and Prejudice</u>

Because Rideau's claim of ineffective assistance of appellate counsel has merit, *supra*, §II(C), it might constitute cause and prejudice to excuse his procedurally defaulted jury-waiver claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *see also Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  Yet, before ineffective assistance of appellate counsel can constitute cause and prejudice, Rideau must show that he did not commit a procedural default with regard to his ineffective assistance of appellate counsel claim.  *See Edwards*, 529 U.S. at 451-52.  Whether Rideau has done so hinges on whether he presented his claim of ineffective assistance of appellate counsel to the Ohio courts as required by Ohio procedural law.

**D.**     **Ohio R. App. P. 26(B)**

The Ohio Rules of Appellate Procedure required Rideau to raise his ineffective assistance of appellate counsel claim in an Application to Reopen Appeal under Ohio. R. App. P. 26(B).  *See Smith v. State of Ohio Dept. of Rehab. and Corrections*, 463 F.3d 426, 436 n.7 (6th Cir. 2006); *see also Lopez v. Wilson*, 426 F.3d 339, 349 (6th Cir. 2005).  Rule 26(B) required Rideau to file his Application to Reopen in the Ohio Court of Appeals within ninety days of the journalization of the appellate court judgment.  Rideau did not do this.

The Ohio Court of Appeals journalized its judgment dismissing Rideau's direct appeal on February 26, 1999.  (Doc. #26 at Exhibit 3).  Rideau did not file his Rule 26(B) Application to Reopen until October 19, 2000.  (Doc. #26 at Exh. 10).  By falling well outside the ninety-day limitation set by Rule 26(B), this constituted a procedural default.  *See Smith*, 463 F.3d at n.7; *see also Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002).

Rideau contends that cause exists to excuse this procedural default due to his appellate counsel's failure to provide constitutionally effective assistance.  This occurred, according to Rideau, when appellate counsel failed to file a timely Rule 26(B) Application to Reopen Appeal in the Ohio Court of Appeals.  This contention lacks merit because Rideau's constitutional right to appellate counsel did not attach to his Rule 26(B) proceedings.  The Supreme Court has "declined to extend the right to counsel beyond the first appeal of a criminal conviction."  *Coleman v. Thompson*, 501 U.S. 722, 756 (1991).  A proceeding under Ohio's Rule 26(B) is not part of a convicted defendant's original direct appeal but is instead a collateral postconviction review proceeding.  *See Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005); *see also Morgan v. Eads*, 104 Ohio St.3d 142, 146-47 (2004).  "As such, there is no federal constitutional right to assistance of

counsel at that stage." *Lopez*, 426 F.3d at 352 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Because the right to effective assistance of counsel derives from the Sixth Amendment's right to counsel on direct appeal, *see Evitts v. Lucy*, 469 U.S. 387, 396 (1985), and because no such right adheres to Rule 26(B) collateral postconviction proceedings, *see Lopez*, 426 F.3d at 352, Rideau was not constitutionally entitled to the effective assistance of counsel in connection with his Rule 26(B) proceedings. *See Coleman v. Thomson*, 501 U.S. 722, 753 (1991); *see also Strickland*, 466 U.S. at 686-87; *Lopez*, 426 F.3d at 352 and n.8. As a result, the ineffectiveness stemming from Rideau's appellate counsel's failure to file a timely Rule 26(B) Application does not establish cause for this procedural default.

Rideau next contends that his claim of ineffective assistance of appellate counsel is not procedurally defaulted because Ohio law excused Rideau's failure to file a timely Rule 26(B) Application as long as he was represented by the same attorney in his direct appeal and in his Rule 26(B) proceedings. Rideau rests this contention on *State of Ohio v. Lentz*, 70 Ohio St.3d 527 (1994) and *State of Ohio v. Cole*, 2 Ohio St.3d 112, 113-14 (1982). He explains that under these cases, "Ohio law has long held that a lawyer is excused from raising a claim of ineffective assistance of appellate counsel until he obtains a new lawyer.... Indeed, Ohio courts routinely refuse to consider claims of ineffective assistance when that claim is made by the lawyer whose effectiveness is at issue...." (Doc. 68 at 10 (citing *Lentz* and *Cole*)).

Rideau reads too much into *Lenz* and *Cole*. In neither case did the Ohio Supreme Court excuse a defendant from failing to file a timely postconviction petition (or Rule 26(B) Application) based on ineffective assistance of appellate counsel because the defendant had the same attorney throughout the appeal and during the time for filing a postconviction petition. Instead, the Ohio

16

Supreme Court in *Lenz* held:

> When a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, *res judicata* bars a claim of ineffective assistance of counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence outside the record, <u>unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising ineffective assistance of trial counsel on direct appeal</u>.

*Lentz*, 70 Ohio St.3d at 527.  In *Cole* the Ohio Supreme Court held:

> Where defendant represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief.

*Cole*, 2 Ohio St.3d at 170.

Rideau's reading of these cases extends their underlying rationale – that an attorney's actual conflict of interest may prevent him from raising a claim of constitutionally ineffective assistance based on his own constitutionally deficient performance, *see Lentz*, 70 Ohio St.3d at 529-30 – to attorney Rosen's failure to file a timely Rule 26(B) Application based on his own ineffective assistance on direct appeal.  Yet, under *Lenz* and *Cole* a defendant must prove that an actual conflict of interest prevented the attorney from filing a claim about his own deficiencies.  *See Lentz*, 70 Ohio St.3d at 531 ("Upon considerations of petitions for postconviction relief, the trial court should conduct a case-by-case analysis to determine whether an actual conflict of interest existed which kept appellate counsel from effectively arguing the ineffectiveness of trial counsel.").  No actual conflict existed in this case.  As explained in the prior Report:

> [T]he conflict of interest identified in *Manning*[6] did not prevent attorney Rosen from raising Rideau's jury-waiver claim in his state habeas corpus action and

---

[6]  The Report discussed *Manning v. Foster*, 224 F.3d1129, 1134 (9th Cir. 2000), a case on which Rideau relied.  (Doc. #47 at 18).

his petition for postconviction relief.  (Doc. #26, Exhs. 10, 15).  The Ohio Court of Appeals recognized, 'This fact seriously undermines Rideau's argument that the attorney [Rosen] attempted to conceal the error in order to protect his reputation or to avoid a malpractice claim.' (Doc. #26, Exh. 11 at 2-3).  Whatever the true reason for Rosen's decision not to raise Rideau's jury-waiver claim on direct appeal or in a timely Rule 26(B) Application, his pursuit of Rideau's jury-waiver claim along two other tracks in the Ohio courts demonstrates that Rosen did not abandon his duty of loyalty to Rideau and was not influenced by his (Rosen's) own self-interest in protecting his professional reputation.

(Doc. #47 at 18).

Attorney Rosen's testimony during the evidentiary hearing in this habeas case established that a conflict of interest did not lead him to avoid raising a timely claim of ineffective assistance of appellate counsel claim based on his own failure to raise a jury-waiver issue on direct appeal. Attorney Rosen testified that he simply did not know about the jury-waiver issue on direct appeal and that he believed he did not know about this issue until close to the time he filed the present habeas case (Doc. #67 at 22-24), which was in August 2000, well after the ninety-days had expired for filing a timely Rule 26(B) Application.[7]  The earliest attorney Rosen knew about the jury-waiver issue was near March 2000 – well after the ninety-day period for filing a Rule 26(B) Application – when he included the issue in a state habeas petition.  *See* Doc. #26, Exh. 23.  Thus, it was attorney Rosen's lack of knowledge, not an actual conflict of interest, that caused him not to file a timely Rule 26(B) Application.  *See* Doc. #67 at 22-24.

In addition, the Ohio Supreme Court has held that having the same counsel on direct appeal and during the ninety-day period to file a Rule 26(B) Application does not constitute "good cause" to excuse the failure to file a timely Rule 26(B) Application, because other attorneys or the

---

[7]  Rideau had until late May 1999 to file his Rule 26(B) Application.  (Doc. #26, Exh. 3; *see* Doc. #68 at 10).

18

defendant himself could have filed a timely Rule 26(B) Application. *State of Ohio v. Gumm*, 103 Ohio St.3d 162, 163 (2004).

Accordingly, Rideau's claim of ineffective assistance of appellate counsel is itself procedurally defaulted by his failure to file a timely Rule 26(B) Application.

### E. Adequate and Independent State Procedural Ground

Rideau contends that his claim of ineffective assistance of appellate counsel is not procedurally defaulted because Ohio R. App. P. 26(B) is not an adequate and independent state procedural ground barring federal habeas review. Rideau reasons that he properly invoked Rule 26(B)(2)(b) by filing a Delayed Application for Reopening. According to Rideau, because that Rule does not set forth any criteria for ruling on delayed motions, and because the decision to grant or deny such a motion is solely within the discretion of the Ohio Appellate court, the decision denying his Delayed Application does not constitute an "adequate" ground barring federal habeas review. (Doc. #68 at 12).

Rideau is correct to the extent he recognizes that federal habeas review is barred when a state court rejects a petitioner's claim based on an adequate and independent state ground. *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *see Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998). However, Rideau overlooks Rule 26(B)(2)(b)'s "good cause" standard. Rule 26(B)(2)(b) permits Delayed Applications for Reopening Appeal only when the defendant shows "good cause" for not filing a timely Application. The Court of Appeals applied this standard to Rideau's Delayed Application and determined that he had not established "good cause" for his untimely filing. *See* Doc. #26, Exh. 11.

Rule 26(B)'s "good cause" standard constituted an adequate and independent state

19

procedural ground  for barring federal habeas review of Rideau's ineffective assistance of appellate counsel claim.  *See Monzo*, 281 F.3d at 577-78; *see also Knuckes v. Brigano*, 70 Fed. Appx. 830, 841 (6th Cir. 2003).  To avoid this result, Rideau relies on *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004) as an example of a case in which an Ohio procedural rule did not constitute an adequate and independent state procedural ground for barring federal habeas relief.  The Ohio procedural rule in *Deitz* was not Rule 26(B); it was Ohio App. R. 5(A).  Rideau therefore analogizes Rule 26(B) to Rule 5(A) in hopes that the inadequacy identified in *Dietz* arises not only from Rule 5(A) but also Rule 26(B).  This approach lacks merit.

*Deitz* held that Rule 5(A), which addresses Motions for Delayed Direct Appeal by leave of the Court of Appeals, did not constitute an adequate ground for barring federal habeas review. *Deitz*, 391 F.3d at 810-11.  The Court of Appeals in *Dietz* explained:

> Rule 5(A) does not specify the criteria the courts should use in determining whether to grant a delayed appeal.  Instead, it simply requires that the defendant set forth the reasons for the failure to perfect an appeal as a matter of right.  The decision to grant or deny a motion for leave to appeal pursuant to Rule 5(A) is ... within the discretion of the appellate court....  A rule that grants such discretion to the courts is not 'firmly established and regularly followed' so as to be adequate... [to bar federal habeas review].

*Dietz*, 391 F.3d at 810-11.  In contrast to Rule 5(A), Rule 26(B)(2)(b) sufficiently specifies the criteria for the courts to use to determine if an untimely Application to Reopen should be allowed by requiring a defendant to show "good cause" for an untimely filing.  Because of this distinction from Rule 5(A), which contains no similar criteria, *Deitz*'s reasoning and holding do not encompass Rule 26(B)(2).

Accordingly, Rule 26(B)'s time requirements and "good cause" standard constitute an adequate and independent state procedural ground for barring federal habeas relief.

## IV.     FUNDAMENTAL MISCARRIAGE OF JUSTICE

Rideau's procedural defaults may be excused if he establishes that a fundamental miscarriage of justice will result from the failure to consider the merits of his claims.  *Coleman v. Thomson*, 501 U.S. 722, 750 (1991); *see Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).  "The 'fundamental miscarriage of justice' test is met only in the 'extraordinary case' where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Hargrave-Thomas v. Yukins* 374 F.3d 383, 389 (6th Cir. 2004) (quoting in part *Carrier,* 477 U.S. at 496)).  "The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'... 'To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror [or finder of fact] would have convicted him in light of the new evidence.'"  *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004)(internal citations omitted).

In light of the Ohio Court of Appeals' discussion of the factual basis underlying Rideau's conviction, *see* Doc. #47 at 5-6, which is entitled to a presumption of correctness upon federal habeas review, *see* 28 U.S.C. §2254(e)(1), Rideau does not present a colorable claim of actual innocence.  Rideau, moreover, presented his theory of actual innocence both at trial and in the Ohio Court of Appeals.  *See* Doc. #43 at 8-9; *see also* Doc. #26, Exh. 5 at 1-5, 10-11.  And, in the instant case, he does not present new evidence in support of a claim of actual innocense.  He has therefore not shown that it is more likely than not that no reasonable fact finder would have convicted him of aggravated trafficking.

Accordingly, although there may be significant doubt about his guilt, for the reasons discussed previously, *supra*, §II(C), this is not the extraordinary case where a convicted defendant

has shown his actual innocense. As a result, the fundamental miscarriage of justice exception does not excuse Rideau's procedural defaults.

## V.     CONCLUSIONS

Based on the prior Report and Recommendations, the evidence presented during the evidentiary hearing, and the analysis set forth above, Rideau's habeas corpus Petition should be denied as follows:

| | |
|---|---|
| Ground One: | Denied on the merits, *see* Doc. #47. |
| Ground Two: | Denied as voluntarily withdrawn by Rideau, *see* Doc. #47 at 11 and Doc. #41. |
| Ground Three: | Denied as waived due to procedural default. |
| Ground Four: | Denied as waived due to procedural default. |

## VI.     CERTIFICATE OF APPEALABILITY

### A.     <u>Applicable Standards</u>

Before Rideau may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable

whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

**B.    Rule 26(B)**

The conclusion in this Report concerning Rideau's Rule 26(B) procedural default is debatable among jurists of reason. This is so because the United States Court of Appeals for the Sixth Circuit recently held that the Ohio Supreme Court had erratically applied the time requirements of Ohio R. App. P. 26(B) in death penalty cases at the time of a petitioner's Rule 26(B) Application. *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006)(pet. for rehearing *en banc* filed Feb. 6, 2006). After reviewing the Ohio Supreme Court's varying approaches to Rule 26(B)'s time requirements, the Court of Appeals explained, "In light of the fluctuating treatment of Rule 26(B) applications by the Ohio Supreme Court, we cannot hold that the state courts have regularly followed and enforced the Rule's timeliness requirement.... Therefore, Rule 26(B) is not an adequate and independent state rule that can preclude consideration of Franklin's ineffective assistance of appellate counsel claim." *Franklin*, 434 F.3d at 421. A reasonable jurist reading *Franklin* could conclude that the Ohio Supreme Court's fluctuating treatment of Rule 26(B) applies to Rideau's non-capital case.

It is insignificant that *Franklin* was a capital case and that Rideau's case was non-capital. The Rule 26(B) procedural-default issue did not involve whether his case was capital or non-capital; it involved whether the Ohio courts consistently and therefore adequately applied Rule 26(B). *Compare Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001)(capital case) *with Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)(non-capital case). Thus, either the Ohio courts consistently applied

23

Rule 26(B)'s time requirement or they did not regardless of the capital or non-capital nature of the case. Inconsistent application of Rule 26(B) in one set of cases (capital cases) is not somehow magically transformed into consistent application of the same Rule by more uniform treatment in another set of cases (non-capital cases).[8]

*Franklin*, moreover, was not the first time the Sixth Circuit Court of Appeals held that Rule 26(B) did not constitute an adequate and independent state procedural rule barring federal habeas relief. In *Richey v. Mitchell*, 395 F.3d 660, 680 (6ᵗʰ Cir. 2005), *reversed and vacated on other grounds, Bradshaw v. Richey*, __ U.S. __, 126 S.Ct. 602 (2005), the Sixth Circuit Court of Appeals identified several cases, including non-capital cases, where the Ohio Courts of Appeals treated Rule 26(B) inconsistently. Although *Richey* was subsequently vacated on other grounds, the Supreme Court did not address this aspect of *Richey*. *See Bradshaw*, 126 S.Ct. at 603-06. Consequently, although *Richey*'s holding has no precedential force, its list of inconsistent Ohio appellate cases involving Rule 26(B) may provide a reasonable basis for concluding that Rule 26(B) was not consistently applied in non-capital cases. *See Richey*, 395 F.3d at 680 (listing inconsistent Ohio appellate cases)[9]; *but see Monzo*, 281 F.3d at 578.

In light of this and if the reasoning in *Franklin* is correct and extends to non-capital cases, then Rule 26(B) was not a firmly established and regularly followed state procedural rule and was therefore not an adequate and independent state procedural ground barring Rideau from federal habeas relief. *See Mapes v. Coyle*, 171 F.3d 408, 421 (6ᵗʰ Cir. 1999). The result: Rideau's claim of

---

[8] This presumes in Respondent's favor without specific investigation into Ohio case law that the Ohio courts treated Rule 26(B)'s time requirement consistently in non-capital cases.

[9] A similar list of inconsistent Ohio appellate cases appears in *White v. Schotten*, 751 (6ᵗʰ Cir. 2000), *overruled on other grounds by Lopez*, 426 F.3d at 352.

ineffective assistance of appellate counsel is neither procedurally defaulted nor waived for purposes of federal habeas review, and he would thus be entitled to a writ of habeas corpus based on the violation of his Sixth Amendment right to effective assistance of appellate counsel on direct appeal.

Accordingly, Rideau has made a substantial showing of a denial of his rights under the Sixth and Fourteenth Amendments.  Consequently, a certificate of appealability should issue on the following questions:

> Whether Ohio App. R. 26(B)'s ninety-day time requirement and "good cause" standard for delayed appeals constituted adequate and independent state procedural grounds barring federal habeas review of Rideau's claim that his rights under the Sixth and Fourteenth Amendments were violated by the ineffective assistance of counsel on direct appeal?

> If so, whether Rideau's appellate counsel provided ineffective assistance during Rideau's direct appeal to the Ohio Court of Appeals in violation of his rights under the Sixth and Fourteenth Amendments?

## C.  *Jackson v. Virginia*

The prior Report concluded that a certificate of appealability should issue to determine whether the Ohio Court of Appeals' application of *Jackson v. Virginia* was objectively reasonable under 28 U.S.C. §2254(d).  (Doc. #47 at 31).

There is no reason to alter this conclusion.  Instead, there is an additional reason to find that a certificate of appealability should issue:  the sufficiency of evidence standards set forth in *Jackson v. Virginia* may not apply to this case, and if so, the Ohio Court of Appeals' application of *Jackson* was unreasonable.

This is a highly unusual case where the trial judge, sitting a finder of fact, reached reasonable inferences about a crucial element of the charged offense – Rideau's possession of the drugs in the trunk of the car – without specifically stating that his reasonable inferences convinced him beyond

25

a reasonable doubt of Rideau's possession.  The sufficiency of evidence standard of *Jackson*, which requires all reasonable inferences to be made in the prosecution's favor, 443 U.S. at 318-19, is built on the foundation of a conviction resulting from proof of guilt at trial beyond a reasonable doubt. This is seen throughout *Jackson*, 443 U.S at 313-24, as well as in its recognition that the trial judge declared himself convinced of guilt beyond a reasonable doubt, 443 U.S. at 311.

If in Rideau's case the Ohio Court of Appeals was correct in its apparent presumption that the trial judge applied the required beyond a reasonable doubt standard to determine whether Rideau possessed the drugs at issue, then its decision to apply *Jackson v. Virginia* cannot be reasonably questioned (on that ground).  Since, however, the trial judge's Decision can be fairly read as making reasonable inferences regarding Rideau's possession of the drugs without requiring proof beyond a reasonable doubt, then the Ohio Court of Appeals' decision to apply the *Jackson* standards conflicts with *Jackson*'s underlying requirement of a determination at trial of guilt beyond a reasonable doubt.  Viewed in this manner, the Ohio Court of Appeals' decision overlooked or failed to appreciate a dispositive constitutional issue, warranting the conclusion that its application of *Jackson* was objectively unreasonable.  *See Washington v. Hofbauer*, 228 F.3d 689, 703 (6th Cir. 2000)(a state court decision is objectively unreasonable under §2254(d) when it "fails to appreciate or even consider critical issues involved...").

Accordingly, for this reason and for the reasons stated in the prior Report (Doc. #47 at 20-27, 31), Rideau has made a substantial showing of a denial of his rights under the Due Process Clause of the Fourteenth Amendment.  Consequently, a certificate of appealability should issue on the following questions:

> Whether the Ohio Court of Appeals' decision to apply *Jackson v. Virginia* was objectively reasonable in light of the trial judge's reasonable inferences without

an explicit finding beyond a reasonable doubt that Rideau possessed the cocaine?

If so, whether the Ohio Court of Appeals' application of the *Jackson v. Virginia* standards was objectively reasonable?

### IT IS THEREFORE RECOMMENDED THAT:

1.    Roderick Rideau's Third Amended Petition for a Writ of Habeas Corpus (Doc. #23) be DENIED and DISMISSED;

2.    A certificate of appealabilty issue under 28 U.S.C. §2253(c) to address the questions certified herein; and

3.    The case be terminated on the docket of this Court.


February 9, 2007

                                        s/Sharon L. Ovington
                                        Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

28