IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RODERICK RIDEAU,                          :

      Petitioner,                    :
                                  Case No. 3:00cv427

      vs.                            :

HARRY RUSSELL, WARDEN,                     :          JUDGE WALTER HERBERT RICE

      Respondent.                    :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART PETITIONER'S OBJECTIONS (DOC. #50) TO INITIAL REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. #47); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART RESPONDENT'S OBJECTIONS (DOC. #51) TO INITIAL REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. #47); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART RESPONDENT'S OBJECTIONS  (DOC. #73) TO SUPPLEMENTAL REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. #70); DECISION AND ENTRY SUSTAINING PETITIONER'S OBJECTIONS (DOC. #74) TO SUPPLEMENTAL REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. #70); INITIAL AND SUPPLEMENTAL REPORTS AND RECOMMENDATIONS ADOPTED IN PART AND REJECTED IN PART; JUDGMENT TO BE ENTERED GRANTING PETITIONER A CONDITIONAL WRIT OF HABEAS CORPUS ON GROUND 4 AND IN FAVOR OF RESPONDENT AND AGAINST PETITIONER ON GROUNDS 1 AND 3; CERTIFICATE OF APPEALABILITY AND CONTEMPLATED LEAVE TO APPEAL IN FORMA PAUPERIS DENIED ON GROUNDS 1 AND 3; TERMINATION ENTRY

---

After a bench trial before Judge Patrick Foley, Petitioner Roderick Rideau ("Petitioner") was convicted in Montgomery County Common Pleas Court of one count of aggravated trafficking in over one hundred times the bulk amount of cocaine, in violation of § 2925.03(A)(9) of the Ohio Revised Code and was subsequently sentenced to a term of incarceration from 15 years to life.  In his direct appeal to the Montgomery County Court of Appeals, Petitioner raised four issues, to wit: that the trial court erred in overruling the motion to suppress evidence; that the evidence was legally insufficient to support his conviction; that Ohio was without jurisdiction to try him, given that no element of the offense took place in Ohio; and that the trial court committed prejudicial error by sentencing him in accordance with the law applicable when he committed the offense for which he had been convicted, since a more lenient sentencing regime was subsequently adopted.  Doc. #26 at Ex. 5.  The appellate court rejected those arguments, and the Ohio Supreme Court denied his request for further review.  See State v. Rideau, 1999 WL 94911 (Ohio App.), discretionary appeal not allowed, 85 Ohio St.3d 1496, 710 N.E.2d 716 (1999).

Subsequently, he sought leave to reopen his direct appeal in accordance with Rule 26(B) of the Ohio Rules of Appellate Procedure, arguing that his appellate counsel had been ineffective for failing to challenge his conviction on the basis that a written waiver of his right to a jury trial did not appear in the record.  Doc. #26 at Ex. 10.  The Montgomery County Court of Appeals rebuffed that application, concluding that it was untimely and, thus, refusing to address the merits of the Petitioner's claim of ineffective assistance of counsel.  Id. at Ex. 11.  The Ohio

Supreme Court once again denied his request for further review.  State v. Rideau, 91 Ohio St.3d 1461, 743 N.E.2d 400 (2001).[1]

Petitioner has filed this litigation under 28 U.S.C. § 2254, seeking a writ of habeas corpus.  In his Third Amended Petition (Doc. #23), the Petitioner has set forth four claims, the second of which he has voluntarily dismissed.  See Doc. #41.  With his first, third and fourth claims, the Petitioner alleges that: he was denied due process, because his conviction was based on insufficient evidence (Ground 1); he was denied his right to a jury trial, as a result of being tried in a bench trial without a jury waiver appearing in the record (Ground 3); and he was denied effective assistance of counsel, as a result of his appellate counsel's failure to raise the issue of the absence of a written jury waiver from the record (Ground 4).  See Doc. #23 at 4-5.

In her initial Report and Recommendations (Doc. #47), Magistrate Judge Sharon Ovington recommended that this Court dismiss Ground 1, and that an evidentiary hearing be conducted on the issues of whether the Petitioner had established cause to excuse his procedural default of Grounds 3 and 4 and whether he was entitled to relief on either claim.  Both the Petitioner and the Respondent filed Objections.  See Doc. #50 (Petitioner's Objections) and Doc. #51 (Respondent's Objections).  This Court declined to rule on those Objections.  See Doc. #52.  Rather, it remanded the matter for a hearing into the questions of why Petitioner's appellate counsel had failed to file a timely application to reopen Petitioner's appeal under Rule 26(B) and whether ineffective assistance of appellate

---

[1]The Petitioner also filed two actions in the Warren County Court of Appeals, seeking a writ of habeas corpus in each instance.  Neither of those actions has a direct impact on this litigation.

counsel constitutes cause and prejudice for the failure to raise the jury-waiver issue in timely fashion. Id. at 2. In addition, this Court directed that the evidentiary hearing address the circumstances of the Petitioner's waiver of a jury trial in state court. Id.

On remand, the Magistrate Judge conducted an evidentiary hearing, after which she issued a Supplemental Report and Recommendations (Doc. #70). In that judicial filing, Judge Ovington, without further discussion of the issue, adhered to her earlier conclusion that Petitioner was not entitled to relief under Ground 1 of his Third Amended Petition (Doc. #23), i.e., that he was denied due process because his conviction was not supported by sufficient evidence, thus recommending that this claim be dismissed on the merits. Doc. #70 at 22. The Magistrate Judge did, however, recommend that this Court grant the Petitioner a certificate of appealability on Ground 1. Id. at 25-27. The Magistrate Judge discussed Grounds 3 and 4 together, concluding that Petitioner's appellate counsel had provided constitutionally deficient representation, by failing to raise the absence of a written jury waiver during his client's direct appeal. Id. at 3-14. However, the Magistrate Judge also concluded that this issue did not serve as the basis for granting a writ of habeas corpus, because that claim had been procedurally defaulted as a result of Petitioner's failure to file a timely application to reopen his direct appeal in accordance with Rule 26(B). Id. at 14-22. Judge Ovington did recommend, however, that this Court grant the Petitioner a certificate of appealability on the question of his procedural default. Id. at 23-25.

As they did with the Magistrate Judge's initial Report and Recommendations (Doc. #47), both the Respondent and the Petitioner have objected to the

Supplemental Report and Recommendations (Doc. #70). In his Objections (Doc. #73), the Respondent argues that this Court should disregard the Magistrate Judge's recommendation that the Petitioner be granted a certificate of appealability on the issues identified above. In his Objections (Doc. #74), the Petitioner argues that the Magistrate Judge erred in concluding that his claim challenging the sufficiency of the evidence was without merit and that his jury waiver and ineffective assistance of appellate counsel claims were procedurally barred.

In ruling on the parties' Objections, this Court has conducted a de novo review of the initial and Supplemental Report and Recommendations (Docs. ##47 and 70), as required by the Sixth Circuit. Flournoy v. Marshall, 842 F.2d 875 (6th Cir. 1988). For reasons which follow, this Court concludes that Judge Ovington correctly recommended that it dismiss Petitioner's due process/sufficiency of the evidence claim (Ground 1) on the merits and that Petitioner was denied effective assistance of appellate counsel as a result of that counsel's failure to raise the absence of a written jury waiver during the direct appeal. This Court, however, cannot agree with the Magistrate Judge's recommendations that the Court grant a certificate of appealability on Petitioner's sufficiency of the evidence claim and that he procedurally defaulted his ineffective assistance of appellate counsel claim.[2] Therefore, this Court grants the Petitioner a conditional writ of habeas corpus, directing that he be released from custody, unless his direct appeal is reinstated within 90 days so that he can raise the issue of the absence of a written jury waiver from the record. The Court begins its analysis, by setting forth its reasons

[2]The Court also concludes that the Petitioner is not entitled to relief on Ground 3 of his Third Amended Petition (Doc. #23), setting forth a claim that he was denied his right to a jury trial.

for concluding that the Magistrate Judge correctly determined in her Initial Report and Recommendations that the Petitioner was not entitled to relief on Ground 1, following which it sets forth its reasons for denying the Petitioner a certificate of appealability on this claim. The Court then turns to the issues raised by Petitioner's jury waiver and ineffective assistance of appellate counsel claims.

## I.  Ground 1: Deprivation of Due Process Because Conviction Was Not Supported by Sufficient Evidence

As indicated, Judge Ovington recommended that the Court deny this claim on the merits, but that it grant the Petitioner a certificate of appealability thereon. The Petitioner has objected to the former recommendation, while the Respondent has objected to the latter. As a means of analysis, the Court will initially discuss the parties' arguments concerning the Petitioner's objection. If it agrees with the Magistrate Judge that the Petitioner is not entitled to relief on this claim, the Court will then turn to the question of whether he is nevertheless entitled to a certificate of appealability.

## A.  Merits of Petitioner's Due Process/Sufficiency of the Evidence Claim

In Ground 1 of his Third Amended Petition (Doc. #23), the Petitioner alleges that his conviction and sentence constitute a deprivation of due process, because there was not sufficient evidence to establish his guilt beyond a reasonable doubt. As an initial matter, the Court will briefly review the legal standards it must apply whenever it rules on a due process/sufficiency of the evidence claim in the context of an action under § 2254.

In <u>Joseph v. Coyle</u>, 469 F.3d 441 (6th Cir. 2006), <u>cert</u>. <u>denied</u>, 127 S.Ct.

1827 (2007), the Sixth Circuit reiterated the governing standard:

> In a due-process challenge to the sufficiency of the evidence, clearly established Supreme Court precedent provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

<u>Id</u>. at 454.  Under the AEDPA, a federal court cannot issue a writ of habeas corpus

unless the state court adjudication of a federal constitutional claim "resulted in a

decision that was contrary to, or an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

§ 2254(d)(1).  In <u>Walls v. Konteh</u>, 490 F.3d 432 (6th Cir. 2007), the Sixth Circuit

elaborated upon that statutory language:

> A state-court decision is considered "contrary to … clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000) (quotation marks omitted).  Alternatively, to be found an "unreasonable application of … clearly established Federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect. <u>Id</u>. at 409-11.  In short, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also have been unreasonable." <u>Id</u>. at 411.

<u>Id</u>. at 436.

Just as the Magistrate Judge incorporated the reasons for rejecting this

claim, set forth in her initial Report and Recommendations (Doc. #47), into her

Supplemental Report and Recommendations (Doc. #70), the Petitioner has

incorporated his arguments, set forth in his Objections (Doc. #50) to the initial

Report and Recommendations (Doc. #47), into his Objections to the supplemental

such.  See Doc. #74 at 15.  In those initial Objections, the Petitioner argued that

the application of Jackson by the State trial and appellate courts was

unreasonable, because those courts failed to consider key arguments and issues,

and failed to give appropriate weight to all of the evidence.  See Doc. #50 at 10.[3]

As an initial matter, it bears emphasis that the Court must review the last state

court to have addressed the merits of Petitioner's argument that his conviction is

based upon insufficient evidence.  Hunt v. Mitchell, 261 F.3d 575, 582 n. 3 (6th

Cir.2001) (stating that "[i]nasmuch as the Ohio Court of Appeals was the last state

court to address the merits of Hunt's appeal, it is the decision of that court that we

must analyze in light of the principles articulated by the Supreme Court in

Williams").  Since the Montgomery County Court of Appeals was the last state

court to review the evidence introduced against the Petitioner and to reject his

argument predicated upon Jackson, this Court initially sets forth that court's

review of the evidence introduced against the Petitioner, as well as its rationale for

rejecting this claim.

In its decision affirming the Petitioner's conviction, the Montgomery County

Court of Appeals reviewed the evidence that had been introduced against him:

> In February 1995, Linda Watson of Inglewood, California, agreed to arrange for the shipment of a 1986 Mazda 323 ("the Mazda") from California to Dayton, Ohio.  Watson understood that she was shipping the car on behalf of Rideau, with whom she had grown up and who was known to her only as "Rod."  Watson's brother, Earl Johnson, helped to set up this transaction.  Rideau provided Watson with some suggestions for choosing a shipping company and arranged for his wife, Heather, to pay Watson for the shipping costs, plus several hundred dollars for her assistance.  Although

---

[3]The Petitioner does not argue that the state courts' conclusion that his conviction was supported by sufficient evidence was contrary to a decision of the United States Supreme Court.

Watson did not have direct contact with Rideau when the Mazda was dropped off at her home, Watson's daughter did see Rideau leaving the car in the driveway. Watson ultimately arranged to have the Mazda shipped by Liberty Express at a cost of $649. James Fiske, the driver, loaded the Mazda onto his car carrier at Watson's home on February 24, 1995.

Per Rideau's instructions, the Mazda was to be delivered to Ellen Meeks in Dayton. Meeks knew Rideau as Ramone Baker and had been intimately involved with him for several years, spending time with him whenever he was in Dayton. Rideau told Meeks that he was having a car shipped to her from California and suggested that he might give the car to her when it arrived. Rideau informed Meeks that the car would be shipped in her name, that the truck driver would call her when the car arrived in Dayton, and that she should accept delivery of the car and then call him immediately.

Several days after leaving California with the Mazda on his car carrier, Fiske was stopped by Indiana state troopers outside of Indianapolis. The precise basis for the stop is unclear from the record, but it appears that the state troopers felt that the car or the car carrier fit some type of drug transportation profile. When questioned about his load, Fiske told the state troopers that he felt "strange" about the Mazda because he had been given the name and phone number of the person to whom he was to deliver the car in Dayton, but not the address, which was unusual. The troopers then searched the vehicle and discovered that the mat in the trunk was glued down. They removed the mat and found a concealed compartment with the door sealed shut. Inside the compartment, the troopers found nine duct-taped packages, which they believed to contain cocaine. Subsequent testing confirmed that the substance contained in the packages was cocaine and that its weight totaled over eleven kilograms.

Upon discovering the cocaine, the Indiana state troopers contacted Dayton police who agreed to cooperate with the investigation and to arrange for a controlled delivery of the Mazda to Meeks. The troopers returned two packages of cocaine to the Mazda, reloaded the Mazda onto Fiske's truck, and escorted the truck to Dayton. The other seven packages of cocaine were delivered directly to the Dayton police. The combined weight of the two packages of cocaine that were returned to the trunk of the Mazda exceeded two kilograms, an amount over one hundred times the bulk amount of cocaine.

On March 3, 1995, after the truck arrived in Dayton, Dayton Police Sergeant Michael Nolan posed as the truck driver to arrange delivery to Meeks. Meeks picked up the Mazda and returned to her home under police surveillance. Once home, Meeks paged Rideau, who immediately returned her call from an airplane. Rideau told Meeks he would pick up the Mazda or would send someone to pick it up for him, and he gave Meeks permission to

use the car in the meantime. When Meeks went out in the Mazda on an errand later that night, she was stopped and arrested for drug trafficking. Watson was also arrested in the following days.

Both Meeks and Watson denied any knowledge of the cocaine in the trunk of the Mazda. Following a search of Watson's home and based on some information provided by her, California police connected the Mazda with Rideau but discovered that it was registered to someone named Carlos Montano. Rideau's photograph was included in photo arrays shown to Watson, to her daughter, and to Meeks, each of whom positively identified him as the man with whom they had dealt about the shipment of the Mazda. Rideau was arrested in Dayton in January 1996. Neither Watson nor Meeks was ever charged in connection with the cocaine.

State v. Rideau, 1999 WL 94911 (Ohio App. 1999) at *1-*2. In rejecting the Petitioner's claim that his conviction was not supported by sufficient evidence, the state appellate court applied the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and reasoned:

> The state presented evidence that Rideau had orchestrated an elaborate plan to have the Mazda shipped from California to Ohio while concealing his ties to the vehicle. Specifically, Watson testified that she had been paid by Rideau to hire a common carrier to ship the Mazda and to deliver it to the carrier. According to Watson, her daughter saw Rideau leave the Mazda in the family's driveway, and Rideau's wife delivered money to cover the cost of the shipping along with several hundred dollars for Watson. Meeks testified that Rideau had instructed her to take delivery of the Mazda in Dayton and to notify him immediately of its arrival. Based on this testimony, a rational trier of fact could have found that Rideau had possessed or controlled the Mazda both in California and in Ohio. Having reached that conclusion, a rational trier of fact could have reasonably inferred that Rideau had knowledge of the narcotics in the car, especially in light of his extensive efforts to conceal his identity as the real shipper of the vehicle, police officers' testimony that the shipment of cars was a common way to transport illegal drugs, and the careful construction of the hidden compartment. Although Rideau claims that numerous other people had the opportunity to place drugs in the car, there is no suggestion that anyone else had an opportunity to construct a hidden compartment or to retrieve the drugs upon their arrival in Dayton. Thus, the evidence was sufficient to support Rideau's conviction.

Id. at *4.

As indicated, the Petitioner argues that the application of Jackson by the state trial and appellate courts was unreasonable, because those courts failed to consider key arguments and issues, and to give appropriate weight to all of the evidence.  Given that the Montgomery County Court of Appeals was the last state court to address the merits of Petitioner's sufficiency of the evidence argument, this Court reviews that decision when ruling on Ground 1 in the Third Amended Petition (Doc. #23).[4]  Having done so, this Court is unable to agree with the Petitioner.  First, Petitioner has failed to cite, nor has research discovered any Supreme Court authority in support of the proposition that a state court misapplies Jackson, unreasonably or not, by failing to consider key arguments and issues, and to give appropriate weight to all the evidence.  The Petitioner contends that,

_____

[4]In his initial Objections, the Petitioner argued, inter alia, that the decision of the trial court finding him guilty was an unreasonable application of Jackson, because Judge Foley indicated therein that certain facts "reasonably lead to the conclusion that Rideau knew that drugs were secreted in the Mazda" (Doc. #26 at Ex. 1, p. 6).  See Doc. #50 at 15-16.  The Magistrate Judge indicated in her initial Report and Recommendations that this statement was "troublesome," because Judge Foley did not indicate that the state had proved Petitioner's knowledge beyond a reasonable doubt.  See Doc. #47 at 26, n. 11.  Given that this Court must review the decision of the Montgomery County Court of Appeals, it is unnecessary to consider Petitioner's argument that the trial Judge's statement is an indication of an unreasonable application of Jackson.  In addition, it bears emphasis that the Petitioner has never argued that he is entitled to the requested relief, because Judge Foley failed to apply the requisite standard of proof, i.e., proof beyond a reasonable doubt.  Moreover, Judge Foley's statement was neither troublesome, nor an indicia of an unreasonable application of Jackson.  That statement was made in the context of Judge Foley's discussion of whether Rideau's knowledge that ccocaine was secreted in the Mazda could be inferred from other facts.  The concept of reasonable inferences is so commonly utilized in the criminal law, that reference to a reasonable inference does not remotely suggest that the beyond the reasonable doubt standard has not been utilized.  See e.g., United States v. Conatser, — F.3d —, 2008 WL 281517 (6th Cir. 2008) (reiterating that, in reviewing a ruling on a motion for judgment of acquittal under Fed. R. Crim. P. 29, "[a]ll reasonable inferences must be drawn in favor of the jury's verdict").

contrary to the appellate court's opinion, others had the opportunity to construct the hidden compartment in the Mazda, given their access to that vehicle, such as the person from whom he purchased the Mazda, Watson, her brother and Fiske. While this Court does not dispute the Petitioner's assertion that others had access to the Mazda, it nevertheless cannot agree with him that this renders the decision of the Montgomery County Court of Appeals an unreasonable application of Jackson.[5]  The state court of appeals cited evidence which established that the Petitioner had orchestrated a secret and elaborate plan to have the Mazda shipped from California to Ohio and that he had directed the intended recipient of that automobile to notify him when the automobile arrived in Ohio.[6]  In addition, after the car had been delivered to Meeks and she had paged Petitioner, he called her back to tell her that he or someone else would retrieve the Mazda from her.  Given that evidence, this Court concludes that the decision of the state appellate court that a rational juror could reasonably infer Petitioner's knowledge that the

_____

[5]In support of this argument, the Petitioner relies upon Piastowski v. Bett, 256 F.3d 687 (7th Cir. 2001).  In Piastowski, the Seventh Circuit affirmed the grant of a writ of habeas corpus, because the state appellate court's rejection of petitioner's sufficiency of the evidence claim was an unreasonable application of Jackson, given that there was no evidence that the petitioner therein had engaged in the acts which the state contended supported his conviction for conspiracy to commit murder.  Herein, in contrast, there is no argument that the facts cited by the appellate court are not supported by the evidence.  Therefore, Piastowski does not support the request for relief under Jackson, herein.

[6]Petitioner contends the complex, secretive nature of the shipment of the Mazda to Dayton was necessary, because the vehicle was a gift for Meeks, with whom he had been carrying on an affair despite being married.  See Doc. #50 at 12.  This argument ignores the fact that, under the Jackson standard, the evidence must be construed in the manner most favorable to the verdict.  Moreover, this argument is belied by the fact that Rideau had his wife pay Watson for the cost of shipping the car to Ohio.

automobile contained cocaine in the secret compartment was not an unreasonable application of <u>Jackson</u>.

Based upon the foregoing, this Court concludes that the Petitioner is not entitled to relief on Ground 1 of his Third Amended Petition (Doc. #23), i.e., that his conviction violated the Due Process Clause of the Fourteenth Amendment, because it was not supported by sufficient evidence.  Accordingly, the Court overrules the Petitioner's Objections (Doc. #50) to the Magistrate Judge's initial Report and Recommendations (Doc. #50) and Objections (Doc. #74) to the Supplemental Report and Recommendations (Doc. #70), as those judicial filings relate to Petitioner's sufficiency of the evidence/due process claim.


B.  Certificate of Appealability

The Magistrate Judge has recommended that this Court grant the Petitioner a certificate of appealability on his sufficiency of the evidence/due process claim. <u>See</u> Doc. #70 at 25-26.  The Respondent has objected to that recommendation, arguing that this Court should not issue such a certificate.  <u>See</u> Doc. #73.  For reasons which follow, this Court agrees with the Respondent.

The requirement for such a certificate is found in 28 U.S.C. § 2253(c), which provides:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In Slack v. McDaniel, 529 U.S. 473 (2000), the Supreme Court explained that an applicant for a certificate of appealability could make "a substantial showing of the denial of a constitutional right," as required by § 2253(c)(2), in accordance with the standard adopted in Barefoot v. Estelle, 463 U.S. 880 (1983). 529 U.S. at 483-84. The Slack Court explained that when the District Court has rejected a petitioner's constitutional claim on the merits, he must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 484. In Miller-El v. Cockrell, 537 U.S. 322 (2003), the Supreme Court reaffirmed the standards for the granting of a certificate of appealability it had established in Slack.

In her Supplemental Report and Recommendations, the Magistrate Judge reasoned that a certificate of appealability was warranted, because Judge Foley based his finding of guilt on reasonable inferences, without explicitly stating that he had found the Petitioner guilty by proof beyond a reasonable doubt. See Doc. #70 at 25-26. Even though Judge Foley did not expressly state that he was applying that standard of proof, this Court cannot conclude that the failure to include such a statement in his decision finding the Petitioner guilty warrants the issuance of a certificate of appealability, because "[t]rial judges are presumed to know the law and to apply it in making their decisions." Walton v. Arizona, 497 U.S. 639, 653 (1990), overruled on other grounds, Ring v. Arizona, 536 U.S. 584

(2002). See also, Frontier Ins. Co. v. Blaty, 454 F.3d 590, 603 (6th Cir. 2006) (noting that "[a]lthough the district court did not explicitly state that following state law in assessing the damages in this case did not conflict with the Constitution and federal law, we believe it may go unspoken that any decision by an Article III judge is made with conscious attention paid to ensure that the decision does not violate the United States Constitution and federal law"); Footnote 4, supra. Quite simply, applying that rule to the failure to explicitly identify the requisite burden of proof is eminently appropriate herein, given that a trial judge must frequently inform a jury as to the burden of proof in a criminal prosecution. Therefore, the absence of a statement by Judge Foley in his decision that the Petitioner's guilt must be (and has been) established with proof beyond a reasonable doubt is, at most, a slip of the pen.

Accordingly, this Court sustains the Respondent's Objections (Doc. #73) to the Supplemental Report and Recommendations of the Magistrate Judge (Doc. #70), to the extent that in that judicial filing Judge Ovington recommended that this Court grant the Petitioner a certificate of appealability (and leave to appeal in forma pauperis) on his sufficiency of the evidence/due process claim, Ground 1 in his Third Amended Petition (Doc. #23).


II. Grounds 3 and 4: Jury Waiver and Ineffective Assistance of Appellate Counsel

With Ground 3 of his Third Amended Petition, Petitioner alleges that he is entitled to a writ of habeas corpus, because he was denied his right to a jury trial, given that he was tried to the court but there is no jury waiver in the record. See Doc. #23 at 5. With Ground 4 of that filing, the Petitioner asserts that he was

denied effective assistance of appellate counsel as a result of counsel's failure to raise the absence of a jury waiver from the record during his direct appeal. Id. at 5, 13. In her Supplemental Report and Recommendations, Judge Ovington did not expressly discuss Ground 3, other than to recommend that this Court conclude that it was procedurally defaulted. See Doc. #70 at 22. As to Ground 4, the Magistrate Judge recommended therein that this Court conclude that, although Petitioner was denied effective assistance of appellate counsel, he was precluded by the doctrine of procedural default, since he failed to seek to reopen his direct appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure in timely fashion. Id. at 2-22. That judicial officer also recommended that this Court grant the Petitioner a certificate of appealability on the question of his procedural default. Id. at 23-25.

The Petitioner has objected to the recommendation of the Magistrate Judge concerning procedural default. See Doc. #74.[7] The Respondent has objected to the recommendation by the Magistrate Judge that the Petitioner be granted a certificate of appealability. See Doc. #73. In his Objections (Doc. #51) to the initial Report and Recommendations (Doc. #47), the Respondent objected to the

_____

[7]In her initial Report and Recommendations, Judge Ovington also recommended that this Court order an evidentiary hearing pertinent to the question of whether Petitioner had procedurally defaulted Grounds 3 and 4, although she questioned whether a conflict of interest prevented his appellate counsel from filing a timely application to reopen the appeal. See Doc. #47 at 17-20. Petitioner objected to that judicial filing, to the extent that the Magistrate Judge had concluded therein that Grounds 3 and 4 were procedurally defaulted. Given that the Court addresses the issue of procedural default in the context of Petitioner's Objections (Doc. #74) to the Supplemental Report and Recommendations (Doc. #70), it overrules, as moot, his Objections (Doc. #50) to the initial such (Doc. #47), as they relate to the issue of procedural default.

failure of the Magistrate Judge to recommend that this Court dismiss Ground 3 as not stating a cognizable claim for habeas relief.  For reasons which follow, this Court agrees with the Respondent that Ground 3 of the Third Amended Petition (Doc. #23), denial of Petitioner's right to a jury trial as a result of being tried in a bench trial without a jury waiver appearing in the record, does not state a cognizable claim for relief under § 2254.  In addition, it adopts, in the main, the recommendation of the Magistrate Judge that the Petitioner was denied effective assistance of appellate counsel as a result of counsel's failure to raise the absence from the record of a written jury waiver, during his client's direct appeal.  This Court, however, cannot agree with the Magistrate Judge that Ground 4 of Petitioner's Third Amended Petition has been procedurally defaulted.[8]  Accordingly, this Court grants the Petitioner a conditional writ of habeas corpus, ordering that he be discharged from incarceration, unless his direct appeal is reinstated within 90 days.  The Court begins by explaining why the Petitioner is not entitled to relief under Ground 3.

---

[8]In Edwards v. Carpenter, 529 U.S. 446 (2000), the Supreme Court held that, although ineffective assistance of appellate counsel may constitute cause, excusing the procedural default of another claim, the ineffective assistance claim itself can be procedurally defaulted.  Herein, the Court does not address the issue of whether ineffective assistance of counsel can constitute cause for a procedural default, since Petitioner has directly asserted a claim of ineffective assistance of appellate counsel in Ground 4, rather than seeking to utilize that alleged ineffective assistance of counsel as cause to excuse the procedural default of another claim. Of course, had Petitioner procedurally defaulted his ineffective assistance of counsel claim herein, such would have prevented this Court from considering its merits.

A.  Ground 3: Jury Waiver

In his Objections (Doc. #51) to the initial Report and Recommendations
(Doc. #47), the Respondent argued that Ground 3 of Petitioner's Third Amended
Petition (Doc. #23) was not subject to review under § 2254, because the absence
of written jury waiver from the record raises merely a question of state law.[9]  This
Court agrees.  It is axiomatic that "[a] federal court cannot issue a writ of habeas
corpus 'on the basis of a perceived error of state law.'  Pulley v. Harris, 465 U.S.
37, 41 (1984)."  Wilson v. Parker — F.3d —, 2008 WL 220418 (6th Cir. 2008).
An examination of the Petitioner's Traverse reveals that Ground 3 of his Third
Amended Petition is based on the assertion that the absence of a written waiver of
the right to a jury trial violates § 2945.05 of the Ohio Revised Code.  See
Doc. #40 at 19-20.  In Humphries v. Green, 397 F.2d 67, 69 (6th Cir. 1968), the
Sixth Circuit held that the failure to obtain a written waiver of the right to a jury
trial, in conformity of § 2945.05, did not constitute a federal constitutional
deprivation.  Accordingly, this Court sustains Respondent's Objections (Doc. #51)
to the initial Report and Recommendations of the Magistrate Judge (Doc. #47), to
the extent that those Objections are predicated on the premise that Ground 3 does
not state a cognizable claim for relief under § 2254.  Of course, the Court's
conclusion that Ground 3 presents a question of state law does not prevent this
Court from considering whether appellate counsel's failure to raise that issue on

---

[9]In his Objections (Doc. #51) to the initial Report and Recommendations
(Doc. #47), the Respondent also argued that the Magistrate Judge was incorrect in
suggesting that ineffective assistance by counsel representing him in the Rule
26(B) proceedings can excuse the failure to file a timely application under that
Rule.  Since it is not necessary for this Court to consider that question herein, it
overrules, as moot, that aspect of the Respondent's Objections (Doc. #51) to the
initial Report and Recommendations (Doc. #47).

direct review deprived Petitioner to his constitutional right to effective assistance of counsel on appeal.

Since "reasonable jurists would not find [this Court's] assessment of the constitutional claims debatable or wrong" (Slack, 529 U.S. at 484), this Court denies the Petitioner a certificate of appealability and leave to appeal in forma pauperis on Ground 3 of his Third Amended Petition (Doc. #23).

B.  Ground 4: Ineffective Assistance of Appellate Counsel

As indicated, Judge Ovington has recommended that this Court conclude that Petitioner was denied effective assistance of counsel during his direct appeal. The Respondent has not objected to that recommendation.  After conducting a de novo review of the question, this Court, for reasons which follow, agrees with the Magistrate Judge.

It cannot be doubted that the Sixth Amendment guarantees a criminal defendant effective assistance of counsel.  See e.g., Evitts v. Lucey, 469 U.S. 387, 396 (1985).  A claim of ineffective assistance of counsel under the Sixth Amendment has two components, to wit: 1) deficient performance by counsel and 2) prejudice to the defendant as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In Strickland, the Court said that establishing that counsel's performance was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  The Strickland Court explained further:

> Judicial scrutiny of counsel's performance must be highly deferential.
> It is all too tempting for a defendant to second-guess counsel's assistance
> after conviction or adverse sentence, and it is all too easy for a court,
> examining counsel's defense after it has proved unsuccessful, to conclude

that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ….

Id. at 689. The Strickland Court also explained the prejudice prong of the test adopted therein:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. When addressing claims of ineffective assistance by appellate counsel, the Sixth Circuit has held that counsel's performance is not deficient merely because he failed to raise every nonfrivolous issue on direct appeal. Joshua v. DeWitt, 341 F.3d 430, 441 (6th Cir. 2003). Indeed, the presumption of effective assistance of appellate counsel will be overcome only when the ignored issues are clearly stronger than the issues presented. Id.; Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).

Section 2945.05 of the Ohio Revised Code provides that a defendant's waiver of his right to a jury trial "shall be in writing." The Ohio Supreme Court has long held that this language means what it says, to wit: a jury waiver must be in writing. For instance in State v. Tate, 59 Ohio St.2d 50, 391 N.E.2d 738 (1979), the Ohio Supreme Court held in the syllabus:

Where a defendant in a petty offense case has a right to trial by jury and pleads not guilty and demands a jury trial in the manner provided by Crim.R. 23(A), it must appear of record that such defendant waived this right in

- 20 -

writing in the manner provided by R.C. 2945.05, in order for the trial court to have jurisdiction to try the defendant without a jury.

In <u>State v. Pless</u>, 74 Ohio St.3d 333-34, 658 N.E.2d 766 (1996), the Ohio

Supreme Court held in ¶ 1 of the syllabus:

> 1.  In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof.  Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.  (<u>State v. Tate</u> [1979], 59 Ohio St.2d 50, 391 N.E.2d 738, and <u>State ex rel. Jackson v. Dallman</u> [1994], 70 Ohio St.3d 261, 638 N.E.2d 563, construed and applied.)

Thus, in <u>Pless</u>, the Ohio Supreme Court reversed the defendant's conviction for premeditated murder and sentence of death imposed by a three-judge panel and remanded the matter for a new trial, because his written jury waiver did not appear in the record, even though the defendant had signed such a waiver.  <u>See</u> also, <u>State v. Lomax</u>, 114 Ohio St.3d 350, 353, 872 N.E.2d 279, 281 (2007) (holding that "to be valid, a waiver must meet five conditions.  It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court").

Appellate counsel's failure to raise the question of the absence of a written jury waiver establishes both the deficient representation and prejudice prongs of the <u>Strickland</u> test.  With respect to deficient performance, appellate counsel raised four issues during his client's direct appeal, to wit: that the trial court erred in overruling the motion to suppress evidence; that the evidence was legally insufficient to support his conviction; that Ohio was without jurisdiction to try him, given that no element of the offense took place in Ohio; and that the trial court

committed prejudicial error by sentencing him in accordance with the law applicable when he committed the offense for which he had been convicted, since a more lenient sentencing regime was subsequently adopted.  Doc. #26 at Ex. 5.  The Montgomery County Court of Appeals rejected each of those arguments.  See State v. Rideau, 1999 WL 94911 (Ohio App. 1999).  Therefore, this Court concludes that the ignored issue, the absence of a written jury waiver from the record, was clearly stronger than the issues presented by appellate counsel, and the presumption of effective assistance has been overcome.  Joshua, 341 F.3d at 441.  Moreover, prejudice is shown, because, in accordance with Pless and the other Ohio Supreme Court decisions cited above, the Petitioner's conviction would have been reversed and the matter remanded for a new trial, if appellate counsel had raised the issue on appeal.  See Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003) (reiterating that "[p]rejudice is established if the issue not raised [on appeal] may have resulted in a reversal of the conviction or an order for a new trial") (internal quotation marks and citations omitted).

Based upon the foregoing, as well as upon most of the reasoning contained in Judge Ovington's Supplemental Report and Recommendations (Doc. #70), as that judicial filing pertains to the question of whether appellate counsel failed to provide effective assistance,[10] this Court concludes that the Petitioner was denied his Sixth Amendment right to effective assistance of counsel during his direct appeal to the Montgomery County Court of Appeals, as a result of counsel's failure

_____

[10]This Court does not adopt the portion of the Magistrate Judge's reasoning which is predicated upon the failure of Judge Foley to explicitly state in his decision that he found the petitioner guilty by proof beyond a reasonable doubt.

to argue that his client's conviction must be reversed due to the absence of a written jury waiver from the record.

Moreover, that conclusion entitles the Petitioner to relief under § 2254, because this Court concludes that he did <u>not</u> procedurally default this claim. The Magistrate Judge concluded that the doctrine of procedural default precluded the Petitioner from prevailing on Ground 4, because he had failed to file a timely petition to reopen his direct appeal in accordance with Rule 26(B) of the Ohio Rules of Appellate Procedure. Rule 26(B) authorizes a criminal defendant to file an application to reopen his direct appeal in order to assert a claim of ineffective assistance of appellate counsel. Such a claim, however, must be filed within 90 days of the date upon which the court of appeals journalizes its judgment, "unless the applicant shows good cause for filing at a later time." In <u>Maupin v. Smith</u>, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit established the framework to be applied when deciding whether federal habeas corpus review is precluded by a petitioner's failure to observe a state procedural rule:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. …
>     Second, the court must decide whether the state courts actually enforced the state procedural sanction. …
>     Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

<u>Id</u>. at 138. The <u>Maupin</u> court also noted that, "[o]nce the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under [<u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)] that there was 'cause' for him to not follow the

procedural rule and that he was actually prejudiced by the alleged constitutional error." Id. at 138.

In Franklin v. Anderson, 434 F.3d 412 (6ᵗʰ Cir. 2006), cert. denied, 127 S.Ct. 941 (2007), the Sixth Circuit applied the test established in Maupin, when deciding whether the failure to comply in timely fashion with Rule 26(B) constitutes a procedural default, preventing a habeas petitioner from prevailing on a claim of ineffective assistance of counsel by the attorney representing him on his direct appeal before the Ohio intermediate appellate court.  Therein, Franklin filed a motion for delayed reconsideration, seeking to reopen his direct appeal in order to assert a claim of ineffective assistance of appellate counsel, nearly three years after the Hamilton County Court of Appeals had affirmed his conviction and the imposition of the death penalty on him.  He filed that motion on June 30, 1993, one day before an amendment to Rule 26, adding paragraph (B).[11]  The Hamilton County Court of Appeals denied that motion as untimely under Rule 26(B). However, at the time petitioner filed the motion for delayed reconsideration, such motions were governed by State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), under which there was no temporal limitation for bringing such a motion.  Id. at 418-19.  The Franklin court, thus, indicated that, if it merely applied Murnahan to the petitioner's motion, there would not have been a procedural default, given that his motion for delayed reconsideration would have been timely. Id. at 419-20.  However, noting that the state appellate court had denied the petitioner's motion, because it was untimely under Rule 26(B), the Franklin court

_____

[11]With that amendment adding paragraph (B), what had been Rule 26 became paragraph (A).  See 434 F.3d at 418.

addressed the issue of whether that rule of appellate procedure met the requirements of the Maupin test.[12]  Id. at 420-21.  Of particular present importance, the Sixth Circuit concluded that Rule 26(B) did not meet the second prong of that test, given that the temporal limitation therein had not been consistently enforced.  Id.  In support of that conclusion, the Franklin court cited a number of decisions by the Ohio Supreme Court in which it had decided untimely motions under Rule 26(B) on the merits rather than enforcing the 90-day requirement in the Rule.  Id. at 421.  The cited cases were all decided between 2000 and 2004, and involved motions filed after Rule 26(B) had become effective. Id.  In Wilson v. Mitchell, 498 F.3d 491, 512 (6th Cir. 2007), the Sixth Circuit applied its decision in Franklin and held that the failure to comply with the timeliness requirement contained in Rule 26(B) did not constitute a procedural default because that Rule had been inconsistently enforced, since its effective date.  In Wilson, the petitioner had filed his application to reopen his direct appeal on December 12, 1996 (id. at 497), long after Rule 26(B) had become effective. The state appellate court had dismissed that application as untimely.

The Magistrate Judge questioned whether Franklin can be applied herein, because that decision arose out of the imposition of the death penalty on Franklin, while herein the Petitioner has not been sentenced to death.  Although the Franklin court reviewed only decisions by the Ohio Supreme Court in death penalty cases, the Sixth Circuit did not therein expressly state that its decision applied only in

---

[12]The decision of the Hamilton County Court of Appeals, applying Rule 26(B) to Franklin's application to reopen his appeal, even though that application was filed one day before the Rule became effective, has not been reported.  This Court assumes that the court applied that Rule, because it is procedural rather than being substantive.

such cases. Moreover, neither the language of Rule 26(B), nor the decisions of the Ohio Supreme Court reviewed by the Sixth Circuit indicate that a request to reopen a direct appeal in a death penalty case is to be treated differently than such a request in a non-capital case. Therefore, this Court concludes that the Petitioner's failure to file an application to reopen his direct appeal under Rule 26(B) in timely fashion does not constitute a procedural default, preventing it from reaching the merits of his claim of ineffective assistance of appellate counsel.[13]

Based upon the foregoing, this Court grants the Petitioner a conditional writ of habeas corpus, requiring his release from custody, if his direct appeal is not reinstated within 90 days to allow him to raise the claim that his conviction must be reversed, because a written jury waiver was not filed.[14] Accordingly, judgment

---

[13]In Monzo v. Edwards, 281 F.3d 568 (6th Cir. 2002), the petitioner argued that his failure to bring certain claims during his direct appeal was excused as a result of ineffective assistance provided by his appellate counsel. The Sixth Circuit held that the petitioner had not shown cause and prejudice, because he had failed to file a motion to reopen his direct appeal under Rule 26(B) in timely fashion. Therein, the Sixth Circuit rejected the petitioner's argument that the "good cause" requirement in Rule 26(B) is not an adequate state procedural ground because there is no uniformity in its application. Id. at 577. The Monzo court did not address the issue addressed by the Sixth Circuit in Franklin, i.e., whether Ohio courts have consistently enforced the timeliness requirement set forth in Rule 26(B).

In Fauntenberry v. Mitchell, — F.3d —, 2008 WL 199542 (6th Cir. 2008), the court distinguished Franklin on the basis that the petitioner therein had requested reopening of his direct appeal before Rule 26(B) had become effective. This Court does not view that decision to undercut its reliance upon Franklin herein, because the Franklin court did not purport to base its decision on that fact. Moreover, in Wilson, the Sixth Circuit applied Franklin in a case where, like Fauntenberry, the petitioner had sought to reopen his appeal, after Rule 26(B) had become effective.

[14]The Petitioner seeks a writ of habeas corpus discharging him, if he is not retried within a stated period of time. Under 28 U.S.C. § 2253, federal courts are

- 26 -

is to enter, awarding the Petitioner such a conditional writ on Ground 4 of his Third

Amended Petition (Doc. #23), and dismissing Grounds 1 and 3, with prejudice.  In

addition, this Court, for reasons set forth above, denies the Petitioner a certificate

of appealability and leave to appeal in forma pauperis on Grounds 1 and 3.

The captioned cause is hereby ordered terminated upon the docket records

of the United States District Court for the Southern District of Ohio, Western

Division, at Dayton.


February 15, 2008


                                    /s/ Walter Herbert Rice
                    _____
                                  WALTER HERBERT RICE, JUDGE
                                  UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.


_____

authorized to dispose of habeas corpus matters "as law and justice require."
Therefore, it is permissible for a federal court to issue a writ, conditioned on the
state conducting proceedings narrower than a full retrial, as long as the narrower
conditions are "tailored to ensure that all constitutional defects will be cured by the
satisfaction of that condition."  Henderson v. Frank, 155 F.3d 159, 168  (3d Cir.
1998).  Herein, the Petitioner was denied his Sixth Amendment right to effective
assistance of counsel during his direct appeal as a result of counsel's failure to
raise the absence in the record of a written jury waiver.  Issuing the conditional
writ described above will cure the constitutional defect suffered by the Petitioner.